CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
DEC 18 2018
JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
DEPUTY CLERK

IN THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
~~DANVILLE~~ DIVISION
ROANOKE

| | |
|---|---|
| DONATA TYBURSKI, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 7:18CV00631 |
| | ) |
| QUEST DIAGNOSTICS INCORPORATED, | ) |
| **Serve: Corporation Service Company, Registered Agent** | ) |
| **100 Shockoe Slip** | ) |
| **2nd Floor** | ) |
| **Richmond, VA 23219** | ) |
| **(Richmond City)** | ) |
| | ) |
|     Defendant. | ) |

## COMPLAINT

Plaintiff Donata Tyburski files this complaint against Quest Diagnostics Incorporated (defendant or "Quest") and as grounds therefore states as follows:

### STATEMENT OF THE CASE, JURISDICTION AND VENUE

(1) This is a suit for sex discrimination (pregnancy discrimination) authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.*, and a state statutory claim for wrongful discharge under Title 40.1 of the Code of Virginia.

(2) This Court has jurisdiction pursuant to 42 U.S.C. §2000e-5(f) and 28 U.S.C. §1343(4). This Court has supplemental jurisdiction over the state statutory claim pursuant to 28 U.S.C. §1367.

(3) Quest Diagnostics Incorporated is a corporation doing business in the western district of Virginia and elsewhere.

(4) Plaintiff at all times material hereto was a resident of the Commonwealth of Virginia and was an "employee" of Quest (plaintiff is not certain of the precise legal name of her employer).

(5) At all times material hereto, Quest is and was a "person" within the meaning of Title VII, Section 701, 42 U.S.C. §2000e(a). At all times material hereto Quest was an "employer" within the meaning of Title VII, Section 701, 42 U.S.C. §2000e(b), that is, at all times material hereto defendant was a person engaged in an industry affecting commerce which had fifteen (15) or more employees for each working day in each of twenty or more calendar weeks during the years of plaintiff's employment or the preceding calendar year.

(6) The unlawful discrimination practices alleged herein were committed within the Western District of Virginia.

(7) Plaintiff timely filed a verified charge against Quest with the Equal Employment Opportunity Commission on May 11, 2018 (charge no. 438-2018-01002); received a notice of right to sue dated September 27, 2018; and files this action within 90 days of receipt of the notice of right to sue.

## STATEMENT OF FACTS

(8) On or about September 27, 2010 (all dates are approximate), plaintiff went to work for Quest as a phlebotomist.

(9) Though plaintiff was employed by Quest, she actually worked in the medical office of a group of doctors (Roanoke Partners in Health) in Roanoke, Virginia.

(10) Plaintiff's performance was at all times satisfactory, and the doctors commended her excellent work ethic and performance.

(11) But, when plaintiff arrived at work after returning from vacation on January 11, 2018, she found that urine containers were missing from the refrigerator. Apparently while plaintiff was on vacation, another employee mistakenly put the containers in the doctors' bio-waste disposal box instead of defendant's bio-waste box. When plaintiff spoke with relatively new supervisor Jessica McDaniel about the issue, McDaniel told plaintiff to go into Roanoke Partner's bio-waste box, remove the containers, and transfer them to defendant's bio-waste box — a clear OSHA violation which would have put plaintiff and employees and patients of the doctors' office at risk of infection or injury. Plaintiff refused to follow McDaniel's instruction, and the doctors' office could not believe that McDaniel wanted plaintiff to enter the bio-waste box. Plaintiff also spoke with defendant's HR representative about McDaniel's request and stated that McDaniel had instructed plaintiff to enter the doctor's bio-waste box. Later, McDaniel sent an email to plaintiff stating that she never told plaintiff to enter the doctor's bio-waste box, to which plaintiff responded that was not true.

(12) On or about February 16, 2018, plaintiff had her annual review at which time McDaniel stated she would get a bonus in March 2018, a raise in April 2018, and another raise in October 2018.

(13) During the meeting, plaintiff told McDaniel that she was pregnant.

(14) That same day, plaintiff turned in her size information for maternity uniforms.

(15) That same day, after plaintiff had left for the day, McDaniel called and told plaintiff that she was on paid administrative leave pending further notice. When

plaintiff asked McDaniel why she was on paid administrative leave, McDaniel did not provide a reason.

(16)  On or about February 23, 2018, plaintiff called to inquire about her status and why she was on paid administrative leave. McDaniel responded that she would look into why plaintiff was on this status and get back with her. McDaniel told plaintiff not to come into work until she was called in.

(17)  On or about February 27, 2018, defendant (McDaniel and another employee) called plaintiff and terminated her employment and told her health insurance would end at midnight that night.

(18)  At the time plaintiff's employment was terminated, McDaniel knew that plaintiff had an appointment with her OBGYN the following day. Plaintiff cancelled the appointment believing she no longer had health insurance. She later received a letter notifying her that her insurance coverage did not terminate until March 1, 2018.

(19)  Defendant offered different reasons for terminating plaintiff's employment. First, defendant stated that plaintiff was terminated because she "wasn't following compliance procedures and that she did not report herself," or words to that effect. But, this was not true — plaintiff did exactly as she was trained to do and as she had always done, without complaint. Second, defendant claimed that it terminated plaintiff for performing nursing functions. This also was not true.

(20)  Plaintiff said to McDaniel during the termination call, "Jessica I just told you I was pregnant. Then you decided to fire me?," or words to that effect. After plaintiff said this, there was total silence for several seconds. Then, Jessica said "bye" and hung up the phone.

4

## COUNT I: CLAIM FOR SEX DISCRIMINATION
## (PREGNANCY DISCRIMINATION)

(21) Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

(22) Defendant, acting through its agents and employees, has engaged in unlawful employment practices in violation of 42 U.S.C. §§2000e *et seq.* by discriminating against plaintiff because of her gender and pregnancy and by terminating her employment because of her gender, pregnancy and/or related medical conditions.

(23) As a direct and proximate result of defendant's actions, plaintiff has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary loss.

(24) At all times material hereto, defendant engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of plaintiff so as to support an award of compensatory and punitive damages.

(25) The above-described acts by defendant constitute sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et. seq.*

## COUNT II: CLAIM FOR WRONGFUL DISCHARGE UNDER VIRGINIA LAW

(26) Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

(27) On or about March 19, 2018, within sixty days of the violation, plaintiff filed a complaint with the Commissioner of the Virginia Department of Labor and Industry concerning the OSHA violation.

(28) As an alternative to or in addition to the claim alleged in Count I of this Complaint, defendant terminated plaintiff's employment for acting to exercise rights

5

Case 7:18-cv-00631-MFU   Document 1   Filed 12/18/18   Page 5 of 6   Pageid#: 5

under the safety and health provisions of Title 40.1 for herself or others in violation of Virginia Code §40.1-51.2:1 or otherwise under Virginia law.

(29) As a direct and proximate result of defendant's actions, plaintiff has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary loss.

WHEREFORE, plaintiff Donata Tyburski demands judgment against defendant Quest Diagnostics Incorporated for injunctive and equitable relief, compensatory and punitive damages, together with pre-judgment interest and for costs and attorney's fees to the extent recoverable by law, and for such other and further relief as may be just and equitable.

Trial by jury is demanded on all issues on which plaintiff is entitled to trial by jury, including any question concerning arbitrability.

                              Respectfully Submitted,

                              DONATA TYBURSKI

                        By: /s/ *Brittany M. Haddox*
                              Of Counsel

Brittany M. Haddox, Esq. (VSB No. 86416)
Terry N. Grimes, Esq. (VSB No. 24127)
GRIMES AND HADDOX, P.C.
Franklin Commons
320 Elm Avenue, SW
Roanoke, Virginia 24016
540-982-3711
540-345-6572 *facsimile*
Email: *bhaddox@terryngrimes.com*
Email: *tgrimes@terryngrimes.com*
      Counsel for Plaintiff